# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

**ORDERED SEALED BY COURT** unsealed on 3/20/08

FILED 2008 MAR 13 PM 3:51
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
_____ KNH _____ DEPUTY

In the Matter of the Search of

22016 Lyons Valley Road
Alpine, California

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER: '08 MJ 0804

I, Mark Weber, being duly sworn depose and say:

I am a Special Agent of the Internal Revenue Service, Criminal Investigations and have reason to believe that on the property or premises known as:

   See Attachment A

in the Southern District of California there is now concealed a certain person or property, namely:

   See Attachment B

which is:

   Evidence, fruits of crime, property designed for use or used in committing criminal offenses including violations of Title 18, United States Code, Sections 371, 1344 and 1014. The facts to support a finding of probable cause are as follows:

   See attached Affidavit of Mark Weber continued on the attached sheet and made a part hereof.   X   Yes   _____ No

*/s/ Mark Weber*
MARK WEBER
Special Agent
Internal Revenue Service
Criminal Investigations

Sworn to before me, and subscribed in my presence
March 13, 2008 at San Diego, California:

*/s/ Anthony J. Battaglia*
HONORABLE ANTHONY J. BATTAGLIA
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

**LOCATION TO BE SEARCHED**

**22016 Lyons Valley Road, Alpine, CA**

The premises to be searched are located at 22016 Lyons Valley Road, Alpine, California. The property and its respective buildings are approximately ¼ mile down a dirt road off Lyons Valley Road. The entrance to the property's dirt road is off Lyons Valley Road and has a white wire fence with a wooden sign bearing the black numbers "22016". Proceeding up the dirt road, the east driveway closest to the outbuilding has a white sign with red print on a green gate which reads, "FRANK TURN LEFT HERE". The outbuilding is a one story brown wood building with brown trim. There is a deck-walkway leading to the front door which has porch lights on each side of the door.

While the above-described outbuilding is on the left after turning left at the gate, the main house is further up on the right. The main house is a single family residence that is further described as a two story brown colored stucco house with a white garage door. The residence is surrounded by a white vinyl fence with the numbers "22016" posted at the gate and entry to the driveway. The house has a tan colored shelter in the front yard along with several large boulders.

<u>Attachment B</u>

<u>ITEMS TO BE SEIZED</u>

Federal agents are authorized to search for evidence of violations of Title 18, United States Code, Sections 1344 (bank fraud), 1014 (false statements on loan applications) and 371 (conspiracy) committed with the assistance of Frank Kohl by manufacturing documentation, such as federal tax returns and other documents for submission to lenders by others. Authorization includes such evidence whether it is in physical or electronic form. The seizure and search of computers and computer media will be conducted in accordance with paragraph 21 of the affidavit submitted in support of this warrant and includes deleted data, remnant data and data in slack space. Evidence to be seized specifically includes:

1. Any and all records, including records purporting to be Federal Income Tax Returns or Tax Information Returns for the corporations or persons listed below: Ben Coleman (aka Ben Rhone), Micah Bachman (aka Tyler Jefferies/Earl Rearick), Lorraine Heist, Justine Rice, Alan and Suzanne Achenbach, AARGI Management, Inc.; ACC Enterprises, Inc.; Administrative Management Services LLC; Advance Service Management; Assisted Business Living Services, Inc.; Assisted Living of America, Inc.; Atlantic Coast Funding; Bryan Swarthout, Inc.; BSI; Business Technologies, Inc.; Chameleon Enterprises; Contractorexam.com; Education Scientific Fun, Inc.; Enchante VIP; Enchante LLC; Enchanted Desert Holdings LLC; ESF Group; First Premier Management; Globaltek Financial Services, Inc.; Globaltek Services, Inc.; Imagine That, Inc.; Jasmine Tema Corporation; Micah Bachman LLC, National Service Providers, Inc.; National Solutions Providers, Inc.; New Century Business Services, Inc.; Pacific Rim Enterprises; Razz Management; REIT LLC; Richardson Communications, Inc.; Sarah Swarthout, Inc.; Trademark Development Partners, Inc.; and, Veon Corporation.

<u>AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT</u>

I, Mark Weber, being duly sworn, depose and declare the following:

1. I am a Special Agent with the Internal Revenue Service (IRS), Criminal Investigation in the San Diego Field Office. I have been a Special Agent since January 1992. In addition, I earned a Bachelor of Science degree in Finance from Oklahoma State University.

2. In the past fifteen years as a Special Agent, I have been involved in numerous cases involving federal income taxes and other complex financial crimes. I have written numerous affidavits for search warrants and seizure warrants involving a wide range of financial crimes. I am a graduate of the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. As part of this program, I attended approximately six months of criminal investigation training. My training courses included but were not limited to criminal law, constitutional law and enforcement techniques including search warrants. This training also encompassed classroom training on the principles of Federal taxation of individuals, corporations, and partnerships. The classroom training in tax included analyzing tax returns, filing requirements, statutes of limitation, gross income, inclusions and exclusions, deductions and losses.

3. I make this affidavit in support of applications for a search warrant for the residence and business office of professional tax return preparer Frank Kohl which is located at 22016 Lyons Valley Road, Alpine, California, as more fully described in Attachment A.

4. Based on the facts set forth herein, there is probable cause to believe that Frank Kohl knowingly participated in a conspiracy to

commit federal offenses, in violation of Title 18, United States Code, Section 371, and aided and abetted others in committing violations of Title 18, United States Code, Sections 1344 (bank fraud) and 1014 (false statements on loan applications). As provided below, there also is probable cause to believe that evidence of these offenses, as described in Attachment B, will be found at the above-described location.

5. This affidavit is based upon information gained by me from several sources, including, but not limited to, bank records, business records, witness interviews, subject interviews, an interview with Frank Kohl, surveillance, and knowledge gained from my training and experience. Because this affidavit is written and offered for the limited purpose of establishing probable cause for the issuance of a search warrant, it does not contain all of the information that the government possesses relative to this investigation.

6. Based on my training and experience, I know that tax return preparers are required by law to maintain records, even if they were not used for the preparation of filed tax returns. Moreover, I know that return preparers are required to maintain tax preparation records and copies of tax returns for seven years. I know that income tax returns are regularly used for loans, investments, credit card applications, and financial planning, including estate planning. I know that because of the volume of said tax records that they are frequently stored and maintained at multiple locations such as residences, home-offices, vehicles, garages, businesses, briefcases,

storage units, computers, hard drives, and disks.

7. Based on my training and experience, I know that individuals provide financial institutions false documents in order to obtain loans which they would not have been otherwise qualified for. I know that a common false document type submitted for business loans are tax returns, prepared on both individual tax forms like IRS Form 1040 and corporate tax forms like IRS Form 1120. Based on my experience, I know that lending institutions regularly review tax returns within their due diligence efforts and could conceivably detect an improperly prepared return based upon abnormal ratios of income to various expenses. Therefore, it is important to a fraudster to present a believable tax return for submission on a lending package to complement the other fraudulent documents therein.

8. Based upon my training and experience, I know that corporate tax returns are somewhat complex in nature and beyond the uninitiated laymen's capacity to produce a believable return. I further know that most tax return preparers are more capable of preparing a believable document based upon their relative experience in such matters. I know that tax preparation records are generally prepared and maintained by the preparer at the business location where the returns were originated.

### FACTS SUPPORTING PROBABLE CAUSE

9. On August 16, 2007, Micah Bachman, aka Tyler Jefferies, was funded on two corresponding mortgage loans totaling $950,000 for the purchase of a single family residence in Orange County, California.

Bachman used the Social Security number of another person, an unwitting child in Kentucky, to obtain these loans. Over time, Bachman created a new credit profile for that SSN using his alias, Tyler Jefferies. Bachman had begun this overall process back in 2005 by originating Jefferies' supposed source of income, Business Technologies, Inc. (BTI), a Wyoming-based shell corporation. Bachman also has been known to use the name Earl Rearick. Bachman has been indicted by a federal Grand Jury in this District for bank fraud and other offenses in Criminal Case No. 08cr*

10. Flagstar Bank, one of the lenders for the mortgage loan, received a fax on July 27, 2007, in connection with the Jefferies loan application. The fax included documentation which had numerous false statements as follows: applicant name; social security number; source of income; amount of income; assets; bank account balances; verification of identity; and verification of self employment. The self-employment verification was material in successfully committed the fraud. The verification letter, dated July 17, 2007, purported to be from Frank W. Kohl, 22016 Lyons Valley Road, Alpine, California, Audit Preparation, Bookkeeping, Tax Practitioner. The letter was written "To Whom It May Concern" and stated that Jefferies was self employed, owned BTI, and has filed business tax returns for over seven years. The letter was signed with the name Frank W. Kohl.

11. On November 14, 2007, I interviewed Frank Kohl about the verification letter. Prior to discussing the letter, Kohl denied that he knew Tyler Jefferies, Micah Bachman, Ben Coleman, Ben Rhone or BTI.

4

Ben Coleman, also known as Ben Rhone, also has been charged in this District for banking offenses, identity theft and other related charges in Criminal Case No. 07cr3246-DMS. After viewing the letter, Kohl told me he had not seen the letter before. Kohl verified that it was his accurate letterhead though he said he did not prepare it nor did he authorize anyone else to prepare it. Kohl stated the signature on the letter was not his signature. Kohl told me he had not received any phone calls about the letter though he mentioned that in 2005 and 2006 he had been faxed similar letters from mortgage brokers which he had subsequently confirmed with them that they were false. Kohl could not recall if he had kept copies of those previous letters. Kohl said he has known Lorraine Heist, the mortgage broker for the above-stated loans, since 2002. Kohl continued that he prepared Heist's tax returns from 2002 through 2003 or 2004.

12. On January 25, 2008, I interviewed Heist about the letter and her role as the mortgage broker for the Jefferies mortgage loans. Heist said she recalled seeing the Frank Kohl letter when the loan documents were gathered for submission but she didn't think much of it as her sister Justine Rice (Jefferies real estate broker for said residence) had referred clients like Jefferies to Kohl in the past. Heist continued that Kohl prepares her taxes but she has only received bills from him, not correspondence like the stated letter. Heist was adamant that she did not write, modify, or assist in any way the preparation of the Kohl letter.

13. On February 8, 2008, I interviewed Heist and Rice about

5

their recent contact with Kohl. They told me that they met with Kohl at the Claim Jumper restaurant in La Mesa around midday Monday (Feb. 4th). Heist said she told Kohl that she and Rice were going to meet with me at 2:00 PM that same day. They both claimed that Kohl said that they needed to come up with a story about how Ben Coleman could have come up with his (Kohl's) letterhead. Kohl suggested that they (Heist/Rice) tell me that their offices were messy and that Coleman had visited there, ostensibly being able to view and pick up Kohl's letterhead. They continued that when Ben Sanchez (introduced as Kohl's attorney and a participant in the meeting) asked about the stated letter, Kohl abruptly changed the conversation and refrained from mentioning it again. They told me that they were both concerned as they listened to Kohl openly lie to Sanchez. They explained that one of the lies proffered was Kohl's suggestion that they tell me they were going to come into an inheritance soon. Heist told me that during this conversation Kohl was adamant that he had never received a $3,500 check from Heist's business, Imagine That. Heist told me she was incredulous that he couldn't recall such a large check and reminded Kohl at the time that he had received it from her.

14. Checking account records from Imagine That's account at Wachovia Bank reveal that check number 91, dated July 25, 2007, was written to Frank Kohl for $3,500, for 'accounting' (on July 27th Kohl's verification letter was faxed as described above). The check was signed by Lorraine Heist. The significance of Imagine That's account at Wachovia is that Heist and her mother, Suzanne Achenbach,

6

applied for a business line of credit utilizing Image That and were funded $49,850 into this same account on July 23rd. I reviewed the documents submitted for said line of credit and noted two tax returns prepared by F. Kohl and Associates, 22016 Lyons Valley Road, Alpine, California. One return was a 2006 Form 1120, U.S. Corporate Income Tax Return, for Imagine That reflecting over $1.2 million in gross receipts and $92,844 in taxable income. The other return was a 2006 Form 1040, U.S. Individual Income Tax Return, for Suzanne Achenbach listing $166,236 in wages.

15. During the same interview as described above on February 8th, I showed Heist/Rice bank copies of above-described tax returns for Imagine That and Suzanne Achenbach respectively. They told me they had never seen those returns before and both agreed the financial information on the returns was false. I asked if they reviewed the loan applications signed by their parents and both replied they had not done so. When I showed them another loan application reporting Ms. Achenbach made $162,000 a year, they both agreed she did not earn that much income. When I pointed to the gross earnings amount for Imagine That on the other loan application, both agreed it was not accurate. When I asked who came up with either these figures or the tax returns, both said it was Coleman. These same loan files contained fraudulent pay stubs purporting commiserate wages for Achenbach.

16. At the beginning of the interview described above on February 8th, Tony Rice (Justine's husband) explained to me that

approximately two years ago he met Ben Coleman at a charity event and that approximately eight months ago he personally introduced Coleman to his return preparer Frank Kohl at the Fuddruckers Restaurant in La Mesa. Tony continued that he brought up this introduction again to Kohl when they met in the fall 2007 at the Sizzler Restaurant off Aero Road and Interstate 15 in San Diego.

17. During my extensive investigation of Coleman, I learned from numerous interviews of witnesses and victims that Coleman was substantially assisted in this illegal activity by Micah Bachman. It became apparent that through these interviews that Bachman mentored Coleman in the means and methods of fraudulent loan consultation. Their "consulting" earned them their respective ill-gotten income and eventually prompted them individually to steal identities for their own fraudulently obtained loans. The loans taken out by them personally and through other individuals (both wittingly and unwittingly) have caused millions of dollars in losses at banks and other lending institutions.

18. Based upon interviews with Coleman and other individuals involved in the overall scheme, I know that the numerous corporations created by Coleman and Bachman respectively have been and may continue to be used in fraudulent loan applications. The following is a listing of Coleman and/or Bachman corporations that have either been used in fraudulent loans or could be using the processes described within this affidavit:

AARGI Management, Inc.; ACC Enterprises, Inc.;

8

Administrative Management Services LLC; Advance Service Management; Assisted Business Living Services, Inc.; Assisted Living of America, Inc.; Atlantic Coast Funding; Bryan Swarthout, Inc.; BSI; Business Technologies, Inc.; Chameleon Enterprises; Contractorexam.com; Education Scientific Fun, Inc.; Enchante VIP; Enchante LLC; Enchanted Desert Holdings LLC; ESF Group; First Premier Management; Globaltek Financial Services, Inc.; Globaltek Services, Inc.; Imagine That, Inc.; Jasmine Tema Corporation; Micah Bachman LLC, National Service Providers, Inc.; National Solutions Providers, Inc.; New Century Business Services, Inc.; Pacific Rim Enterprises; Razz Management; REIT LLC; Richardson Communications, Inc.; Sarah Swarthout, Inc.; Trademark Development Partners, Inc.; and Veon Corporation.

19. Based upon my analysis of fraudulent loan applications, I know that a tax return for Suzanne Achenbach was utilized to obtain a business line of credit as described above. Since this return was ostensibly prepared by Kohl, he logically could have the name and identifiers for Suzanne's husband, Alan. My initial investigation has revealed that in approximately one year the Achenbach's have obtained over $750,000 in fraudulent loans and over $200,000 more in auto leases, using admittedly and apparently false income representations. Based upon the facts set herein, false returns prepared by Kohl for the Achenbach's likely reside either physically or digitally within the address requested for search.

20. Records maintained by the San Diego County Recorder's Office confirm that 22016 is owned by Frances Kohl, William Kohl, and

Caroline Kohl. Surveillance of the property confirms that Frank Kohl maintains an office at this address. Internet research shows that Kohl's listed business telephone number [(619) 445-4201] as it appears on the above-stated return and letter is connected to 22016 Lyons Valley Road. On February 1, 2008, I called the listed number and I left a message after the greeting stated that it was Frank Kohl's business. Internet research also shows that Kohl advertises his address for his tax preparation business. An employee with the US Postal Service confirmed that Kohl, Kohl Associates, and other businesses receive mail at the stated address.

## COMPUTER SEARCH PROTOCOL

21. With the approval of the court in signing this warrant, agents executing this search warrant will employ the following procedures regarding computers that may be found on the premises which may contain information subject to seizure pursuant to this warrant:

### Forensic Imaging

a. After securing the premises, the executing agents will consult with a computer specialist to determine the feasibility of obtaining forensic images of electronic storage devices while onsite. The feasibility decision will be based upon the number of devices, the nature of the devices and the volume of data to be imaged. The preference is to image onsite if it can be done in a reasonable amount of time and without jeopardizing the integrity of the data and the safety of the agents. The number and type of computers and other devices and the number, type and

size of hard drives are of critical importance. It can take several hours to image a single hard drive - the bigger the drive, the longer it takes. As additional devices and hard drives are added, the length of time that the agents must remain onsite can become overly intrusive, dangerous and impractical.

b. If it is not feasible to image the data on-site, the computer equipment and any peripherals will be seized and transported offsite for imaging. Once a verified image has been obtained, the owner of the equipment will be notified and the equipment returned within thirty (30) days of seizure absent further application to this court.

c. A forensic image is an exact physical copy of the hard drive or other media. It is essential that a forensic image be obtained prior to conducting any search of the data for information subject to seizure pursuant to this warrant. A forensic image captures all of the data on the hard drive or other media without the data being viewed and without changing the data in any way. This is in sharp contrast to what transpires when a computer running the common Windows operating system is started, if only to peruse and copy data - data is irretrievably changed and lost. Here is why: When a Windows computer is started, the operating system proceeds to write hundreds of new files about its status and operating environment. These new files may be written to places on the hard drive that may contain deleted or other remnant data. That

11

data, if overwritten, is lost permanently. In addition, every time a file is accessed, unless the access is done by trained professionals using special equipment, methods and software, the operating system will re-write the metadata for that file. Metadata is information about a file that the computer uses to manage information. If an agent merely opens a file to look at it, Windows will overwrite the metadata which previously reflected the last time the file was accessed. The lost information may be critical.

d. Special software, methodology and equipment is used to obtain forensic images. Among other things, forensic images normally are hashed, that is, subjected to a mathematical algorithm to the granularity of 1038 power, an incredibly large number much more accurate than the best DNA testing available today. The resulting number, known as a Ahash value@ confirms that the forensic image is an exact copy of the original and also serves to protect the integrity of the image in perpetuity. Any change, no matter how small, to the forensic image will affect the hash value so that the image can no longer be verified as a true copy.

<u>Forensic Analysis</u>

e. After obtaining a forensic image, the data will be analyzed. Analysis of the data following the creation of the forensic image is a highly technical process that requires specific expertise, equipment and software. There are literally

thousands of different hardware items and software programs that can be commercially purchased, installed and custom-configured on a user=s computer system. Computers are easily customized by their users. Even apparently identical computers in an office environment can be significantly different with respect to configuration, including permissions and access rights, passwords, data storage and security. It is not unusual for a computer forensic examiner to have to obtain specialized hardware or software, and train with it, in order to view and analyze imaged data.

    f.    Analyzing the contents of a computer, in addition to requiring special technical skills, equipment and software also can be very tedious. It can take days to properly search a single hard drive for specific data. Searching by keywords, for example, often yields many thousands of hits, each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant hit does not end the review process. As mentioned above, the computer may have stored information about the data at issue: who created it, when it was created, when was it last accessed, when was it last modified, when was it last printed and when it was deleted. Sometimes it is possible to recover an entire document that never was saved to the hard drive if the document was printed. Operation of the computer by non-forensic technicians effectively destroys this and other trace evidence.

13

Moreover, certain file formats do not lend themselves to keyword searches. Keywords search text. Many common electronic mail, database and spreadsheet applications do not store data as searchable text. The data is saved in a proprietary non-text format. Microsoft Outlook data is an example of a commonly used program which stores data in a non-textual, proprietary mannerB ordinary keyword searches will not reach this data. Documents printed by the computer, even if the document never was saved to the hard drive, are recoverable by forensic examiners but not discoverable by keyword searches because the printed document is stored by the computer as a graphic image and not as text. Similarly, faxes sent to the computer are stored as graphic images and not as text.

  g. Analyzing data on-site has become increasingly impossible as the volume of data stored on a typical computer system has become mind-boggling. For example, a single megabyte of storage space is the equivalent of 500 double-spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes, is the equivalent of 500,000 double-spaced pages of text. Computer hard drives are now capable of storing more than 100 gigabytes of data and are commonplace in new desktop computers. And, this data may be stored in a variety of formats or encrypted. The sheer volume of data also has extended the time that it takes to analyze data in a laboratory. Running keyword searches takes longer and results in more hits that must be

14

individually examined for relevance. Even perusing file structures can be laborious if the user is well-organized. Producing only a directory listing of a home computer can result in thousands of pages of printed material most of which likely will be of limited probative value.

h.  Based on the foregoing, searching any computer or forensic image for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months. Keywords need to be modified continuously based upon the results obtained; criminals can mislabel and hide files and directories, use codes to avoid using keywords, encrypt files, deliberately misspell certain words, delete files and take other steps to defeat law enforcement. In light of these difficulties, your affiant requests permission to use whatever data analysis techniques reasonably appear necessary to locate and retrieve digital evidence within the scope of this warrant.

i.  All forensic analysis of the imaged data will be directed exclusively to the identification and seizure of information within the scope of this warrant.

## CONCLUSION

22.  Based on the facts set forth herein, there is probable cause to believe that on the premises described in Attachment A there is evidence, as described in Attachment B, of violations of federal law as provided herein and in Attachment B.

23. This is an ongoing investigation. Premature disclosure of the contents of this affidavit could result in the destruction or concealment of evidence by the subject of the investigation other conspirators, both known and unknown. Accordingly, I respectfully request that this affidavit and application be sealed until further order of the court.

Mark Weber, Special Agent
Internal Revenue Service
Criminal Investigations

Subscribed and sworn to before me
this 13th day of March, 2008, at San Diego, California

HONORABLE ANTHONY J. BATTAGLIA
UNITED STATES MAGISTRATE JUDGE